CASE 68—PETITION EQUITY—MAY 25.

# Hessey, &c., v. Hessey.

### APPEAL FROM NELSON CIRCUIT COURT.

PARTITION—ESTOPPEL BY VERBAL AGREEMENT.—A widow verbally agreed with two of her three children (a son and daughter) that if they would convey to the third child their interest in a tract of land left by their father they should jointly occupy and use with her, and at her death have, the whole of the "home place," which was owned jointly by her and their father, she owning an undivided third. The two children conveyed accordingly and occupied the home place jointly with their mother for many years, and until the daughter married, when the son found

another home. In this action by the mother for a partition of the home tract, and the allotment of one-third to her and one-third each to the son and daughter, the chancellor adjudged a division into two parts—one to be allotted to the son and one to the daughter, the son being required to pay annually such a reasonable sum for the support of his mother as will be sufficient for that purpose when added to what the daughter should contribute. *Held*—That the judgment is, under all the circumstances, just and equitable. The mother can not claim one-third of the land absolutely, the agreement by her with her children, although verbal, being an effectual estoppel against her; and being too old to manage any part of the land, the allotment of one-third to her for life would be of no benefit to her.

GEO. S. FULTON FOR APPELLANT.

A verbal agreement for the division of land is void. (White, &c., v. O'Bannon, 9 Ky. Law Rep., 334; Duncan v. Duncan, 13 Ky. Law Rep., 918.)

JOHN S. KELLEY FOR APPELLEE.

This is not the case of a mere parol division of lands, but the appellee was induced by the representations of the parties now complaining, to convey a valuable interest for the benefit of his sister, Mrs. McGee, and they stood by and saw Mrs. McGee convey to him an undivided one-third interest of one-ninth in consideration of his joining in the deed to her vendee.

But even where a partition is by parol or is illegal and informal, if acquiesced in for a long time, or improvements made, the courts will recognize it as valid. (Parker v. Anderson, 5 Mon., 450; Pringle v. Sturgeon, Litt. Sel. Cases, 113.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1848, Abraham Hessey died in Nelson county, owner of seventy-eight acres of land on Cox's creek, and an undivided third of a tract of one hundred and seventy-one acres whereon he then resided. He had contracted for another third of that tract, which was, after his death, paid for with proceeds of his estate. His widow, Mary Hessey, owned, by inheritance, the remaining third of that tract, and was, after her husband's death, allotted dower in the Cox's creek land.

Abraham Hessey left three children by Mary, all infants, viz. : William B., Elizabeth and Precious.

In 1874 Elizabeth married —— McGee, and at the request of the mother, Mary, the other two· children, William B. and Precious, conveyed to Elizabeth McGee, or her vendee, the tract of seventy-eight· acres on Cox's creek, in consideration of her conveyance to them of her undivided third interest in the home tract of one hundred and seventy-one acres. It is not disputed, but admitted by parties to this action, that William B. and Precious Hessey were induced to make the conveyance to the vendee of Elizabeth McGee, by the request and verbal agreement of their mother that . they were to have the whole of the home tract of one hundred and seventy-one acres ; and they both have testified they would not have parted with their entire interest in the Cox's creek land, worth about, or perhaps a little more than, one-third of the home tract, but for the agreement of their mother for them to jointly occupy and use, and at her death to have, the whole of the home place, including her undivided third, which was necessary in order to make their respective shares equal to what Elizabeth McGee had gotten in the manner mentioned.

That the arrangement might be carried out, the mother, Mary, relinquished her dower interest in the Cox's creek land, and thereafter she was supported and resided on the home place, which was jointly occupied, used and claimed by William B. and Precious without dispute or contention, until 1888, when Precious married Barton Snyder. During that period

William B. and Precious had, with money accumulated by their own efforts, purchased jointly two or three small tracts adjoining the home place; and he had built and occupied a dwelling-house on another part of the land, the mother and Precious continuing to reside at the old homestead. There was, in 1888, after Precious married, a division made by commissioners of the home tract and the three small tracts into two parts, one of which, including his dwelling-house, was allotted to William, and the other, whereon was the homestead, was allotted to Precious. But although both Precious and her mother had agreed to make the division, and commissioners had been agreed upon for the purpose, who, as appears, made an apparently fair and just division, they, for some reason not satisfactorily explained, refused to abide by it, though the two lots were thereafter separately occupied and cultivated until this action was brought in 1891.

The purpose of the action instituted by Mary Hessey, the mother, Precious Snyder and her husband, Barton Snyder, against William B. Hessey, is to have the home tract of one hundred and seventy-one acres divided into three parts — one to be set apart and conveyed absolutely to Mary Hessey, and the other two to William B. and Precious respectively. The lower court, however, refused prayer of the petition, and, instead, adjudged a division into two parts, one to be allotted to William B. and the other to Precious Snyder, but the former is required to pay annually for support of his mother a sum fixed by the commissioners, who attempted to make a division in 1888,

which sum appears to be reasonable and sufficient, when added to what Precious Snyder should contribute, to comfortably support her.

It seems to us the judgment rendered is the only one a chancellor could, under the circumstances, render, that would be just and equitable under all the circumstances. For it is evident an allotment of one-third to the mother, who is too old to manage it successfully, would be of no benefit to her; and to allot one-third to her absolutely would be unjust to William B. For although the agreement of his mother upon faith of which he parted with his interest in the Cox's creek land in 1874, was verbal, we think it should be treated as an effectual estoppel as against his mother. Besides, she admits, in her testimony as a witness, the agreement was made, and makes it very clear she does not even now wish to violate it, or deprive William B. of ultimate acquisition of one entire half of the home place.

Judgment affirmed.